UNITED STATES BANKRUPTCY
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x

In re:

    LE PETIT PETOU LLC,

                Debtor.

------------------------------------------------------------x

Chapter 11

Case No. 24-42136 ess

# LE PETIT PETOU LLC SUBCHAPTER V PLAN OF REORGANIZATION

## BACKGROUND

A.    <u>Description and History of Debtor's Business</u>:

        The Debtor is a New York limited liability company with its corporate office located at 113-24 Queens Boulevard, Forest Hills, New York. The Debtor is a provider of pet grooming services, and also sells small pet-related items. The company was formed in or around October of 2010. The Debtor has minimal assets. The Debtor leases the corporate office, and owns no real property. There are no accounts receivable. The sole assets of the Debtor are tables and chairs which are used to groom animals, as well as approximately $4,000.00 of small pet related items including leashes, dog bowls and decorative collars.

        The primary reason for the debtor's filing of the instant case was to address the accumulation of debt which occurred when the Covid 19 pandemic arrived in New York City, and caused an extreme multi year slow-down in the debtor's operations. In addition it should also be noted that the Debtor's principal, Alexandra Matamoros ("Matamoros"), lost both her mother and her husband as a result of the pandemic. The emotional impact of these losses complicated the Matamoros' ability to attend to her business during this time period.

The debtor filed its chapter 11 petition on May 22, 2024.  The deadline for non governmental units to file proofs of claim has passed.  The US Small Business Administration filed a secured claim in the sum of $101,765.95.  The Debtor intends to object to this claim as the total assets of the debtor are valued at approximately $4,000.00.  The New York State Department of Taxation and Finance filed a priority claim for approximately $2,000.00.  In addition, Con Edison and National Grid collectively filed claims totaling $40,000.00 for electric and gas use.  Finally, American Express filed unsecured proofs of claim totaling $17,000.00.

B:      Liquidation analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the plan will receive at least as much under the plan as such claim and equity interest holders would receive in a chapter 7 liquidation.  A liquidation analysis is attached to the Plan as Exhibit A.  The liquidation analysis reflects that general unsecured creditors would receive no distribution of the debtor's assets were liuquidaste3d because the total sum of the debtor's assets are less than the amount owed to the US Small Business Administration, the creditor holding a perfected first priority interest in the debtor's assets.

C.      Ability to Make Future Plan Payments and Operate Without Further Reorganization

The Plan Proponent must also show that it will have enough income over the life of the Plan to Operate the Debtor's business and to submit timely Plan payments.  The Plan Proponent has provided projected financial information (the "Projections") as Exhibit B.  The Plan Proponent's projections indicate that the debtor will have projected disposable income (as defined under 11 U.S.C. §1191 of the Bankruptcy Code) for the period described in 1192(c)(2) in the sum of $500.00.  The debtor will commit to their disposable income

toward plan payments over a five year period from funds contained in the DIP account as well as from continuing business operations. The final plan payment is expected to be paid in July 2029.

The projections are based upon a combination of historical results factoring in the impact of Covid 19 on such results, actual income and expenses during this case as well as reasonable educated estimates of anticipated performance based upon Matamoros' experience operating the debtor.

**You should consult with your accountant or financial advisor if you have any questions pertaining to these projections.**

**<u>Article 1 Summary</u>**:

This plan of reorganization (the "Plan") under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") proposes to pay creditors of Le Petit Petou LLC (the "Debtor") from cash flow from operations.

This Plan provides for:        One class of unsecured Priority claims.

Two classes of secured claims;

One class of unsecured non-priority claims; and

One class of equity security holders.

Unsecured non-priority creditors holding allowed claims will receive distributions which the Proponent of this Plan has valued at approximately $0.14.9 cents on the dollar. This Plan also provides for the payment of administrative and priority claims.  The debtor reserves the right to object to certain claims, which if successful could increase the pro rata distribution to allowed creditors.

All creditors and equity security holders should refer to articles 3 through 6 of this Plan for information relating to the precise treatment of their claim.

**Your rights may be affected.  You should read these papers carefully and discuss therm with your attorney, if you have one. (If you do not have an attorney you may wish to consult with one).**

## Article 2: Classification of claims and interests:

| | | |
|---|---|---|
| 2.01 | Class 1 | All allowed claims entitled to priority under §507(a) of the Bankruptcy code (except administrative expense claims under §507(a)(2) and priority tax claims under § 507(a)(8)). This would include the Priority claim filed by the New York State department of Labor. |
| 2.02 | Class 2(a) | The claim of the US Small Business Administration ("SBA Claim"), <u>to the extent allowed as a secured claim under §506 of the Bankruptcy Code</u>.  The SBA filed a secured claim in the sum of $101,765.95, but is only secured up to the value of the collateral, which consists of $4,000.00 of in-store inventory. |
| 2.03 | Class 2(b) | That portion of the claim filed by the New York State Department of Taxation, amounting to $50.60, which NYS has designated secured. |
| 2.04 | Class 3 | That portion of the SBA Claim which is not a secured claim under §506 of the Bankruptcy Code shall be treated as an unsecured non priority claim and shall receive a pro rata distribution along with all remaining unsecured non priority claims allowed under §502 of the bankruptcy Code. |
| 2.05 | Class 4 | Equity interests of the Debtor. |

## Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees

3.01 Unclassified claims:     under section §1123(a)(1) administrative expense claims are priority tax claims are not in classes.

3.02 Administrative expense claims: each holder of an administrative expense claim allowed under section §503 of the Code will be paid in full on the effective date of the Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the debtor. Included in those administrative claims to be paid on the effective date or

soon thereafter shall be a fee and reimbursement of expenses for the Sub Chapter V Trustee and professional compensation and reimbursement of expenses for the debtor's retained counsel in amounts to be determined by the Court after notice and a hearing.

3.03 Priority Tax Claims: Each holder of a priority tax claim will be paid on account of such claim in full in cash through regular monthly installment payments of a total value as of the effective date of the plan, plus interest at the rate in effect nas of the calendar month in which the Plan is confirmed pursuant to IRC Sections 6601 and 6621 or other applicable statute over a period ending not later than which is 5 years after the date of the entry of the order for relief in this case.

3.04 Statutory fees:    All fees to be paid under 28 U.S.C. §1930thgat are owed on or before the effective date of this Plan have been paid or will be paid on the effective date.  As this is a subchapter V case, no such fees are due.

## Article 4: Treatment of claims and interests under the plan

Claims and interests shall be treated as follows under thus Plan:

| | | |
|---|---|---|
| Class 1 Priority Claims (excluding those addressed in Article 3 above) of the US Dept. Of Labor | Unimpaired | Class 1 consists  of allowed (non tax) priority claims. Same shall be paid in full upon the effective date.<br><br>Class 1 is unimpaired and does not have the right to vote to accept or decline the Plan |
| Class 2(a): Claim filed by the SBA | Impaired | Class 2(a) The value of the creditor's interest in the collateral shall be determined pursuant to section §506(a) of the Bankruptcy Code. The secured claim shall be paid in full from the debtor's business income<br><br>Class 2(a) is impaired and therefore has the right to vote to accept or reject the Plan. |

| | | |
|---|---|---|
| Class 2(b) that portion of the claim filed by the New York State Dept. Of Taxation and Finance, which NYS has designated secured | Unimpaired | Class 2(b) The secured portion of the claim filed by NYS shall be paid in full on the effective date.<br>Class 2(b) is unimpaired and is not entitled to vote to accept ir reject the Plan. |
| Class 3: that portion of the SBA claim which is not fully secured, in addition to all remaining unsecured non priority claims allowed under §502 | Impaired | Class 3 includes the unsecured portion of the SBA claim in addition to the general unsecured non priority claims filed by National Grid, Con Edison and American Express. Class 3 claims total $158,001.04, and shall receive a total of $23,569.51 over the life of the Plan $392.82 shall be submitted to all creditors in class 3 on a pro rata basis, which shall result in a payment of 14.9% on class 3 claims.<br>Class 3 is impaired and therefore has the right to vote to accept or reject the Plan. |
| Class 4: equity interests of the debtor | Unimpaired | Class 4: Upon the effective date of the plan, the holder of the interests of Le Petit Petou LLC shall retain such interests.<br>Class 4 creditors are unimpaired and are deemed to have voted to accept the Plan. |

## Article 5: Allowance and disallowance of claims

Disputed claim       A disputed claim is a claim that has not been allowed or disallowed by a final nonappealable order and as to which either:

(I) a proof of claim has been filed or deemed filed and the debtor or another party in interest has filed an objection or

(Ii) no proof of claim has been filed and the Debtor has scheduled such claim as disputed contingent or unliquidated.

Delay of distribution   No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

Settlement of:          The Debtor will have the power and authority to settle and compromise
disputed claims         a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## Article 6: Provisions for Executory Contracts and Unexpired leases

6.01 Assumed executory   (a) the Debtor assumes, and if applicable assigns, the following
contracts and            executory contracts and unexpired leases as of the effective
unexpired leases         date:
unexpired leases

Debtor's lease with AJ and Sons (See Schedule G)

(b) Except for executory contracts and unexpired leases that (i) have already been rejected by an order of the Court; (ii) otherwise been terminated or expired by their terms; (iii) otherwise have been assumed or if applicable assigned before the effective Date or under section 6.01(a) of this Plan or that are the subject of a pending motion to assume and if applicable, assign, the debtor will be deemed to have rejected all executory contracts and unexpired leases as of the effective date.

(C) A proof of claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 30 days after the date of the order confirming this plan.

## Article 7: Means for Implementation of the Plan

The distribution to the creditors of the debtor that are to be made on or after the effective date under this plan shall be funded from the ongoing operations of the debtor post-effective date and existing cash of the debtor. The debtor specifically reserves all future income necessary for operating expenses and working capital.

## Article 8: General Provisions

| | |
|---|---|
| 8.01 Definitions and rules of construction | The Definitions and rules of construction set forth in §§101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan. |
| 8.02 Effective date | The effective date of this Plan is the first business day following the date that is 14 days after the entry of the confirmation order.  If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated. |
| 8.03 Severability | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| 8.04 Binding effect | The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity. |
| 8.05 Captions | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |
| 8.06 Controlling effect | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of New York govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan |
| 8.07 Corporate governance | Upon the effective date, to the extent applicable to the debtor's corporate form under then laws of the state of New York the debtor shall seek to amend its articles of incorporation to include a provision inhibiting the issuance of non voting equity shares, and providing, as to the several classes of securities possessing voting power an appropriate distribution of power among such classes, including, in the case of any class of equity holders having a preference over another class of equity securities with respect to dividend and adequate provisions for the election of directors representing such preferred class in the event of default of payment of such dividends. |
| 8.08 Retention of Jurisdiction | The Bankruptcy Court may retain jurisdiction of all matters related to the Plan |

## **Article 9: Discharge**

Section 1141 (d)(3) is not operable because the Debtor has filed this case under Subchapter V, the company does not provide for liquidation, the Debtor will continue in business, and the debtor would receive a discharge if this case had been filed under Chapter 7.  Accordingly, the Debtor shall receive a discharge of all debts provided for under Section 1141 (d)(1)(A) upon completion of all payments due within the first 3 years of the Plan.


If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code.  The Debtor will not be discharged from any debt imposed by this Plan.


If the Debtor's Plan is confirmed under § 1191(b), confirmation of the Plan does not discharge any debt provided for in this Plan until the Court grants a discharge on completion of all payments due under this Plan, or as otherwise provided in § 1192; of the Code. The Debtor will not be discharged from any debt:
(I) on which the last payment is due after completion of the plan, or as otherwise provided in §1192; or
(Ii) excepted from discharge under §523(a) of the Code, except as provided in Rule 4007 (c) of the Federal Rules of Bankruptcy Procedure.


Dated:  08/17/2024

LE PETIT PETOU LLC

 /s/ Alexandra Matamoros
ALEXANDRA MATAMOROS
President
Plan Proponent


LAW OFFICE OF ROBERT NADEL
Counsel for Debtor and Plan Proponent

 /s/ Robert Nadel
Robert Nadel Esq
68 South Service Road
Suite 100
Melville NY 11747